Filed 1/19/16  In re J.J. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re J.J. et al., Persons Coming Under the Juvenile Court Law. | C077920 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY, | (Super. Ct. No. J06087) |
| Plaintiff and Respondent, | |
| v. | |
| LAURA J., | |
| Defendant and Appellant. | |

Laura J., mother of the minors, appeals from orders of the juvenile court entered at the six-month review hearing terminating her reunification services.  (Welf. & Inst. Code, §§ 395; 366.21, subd. (e).)[1]  Mother contends the court erred in terminating her reunification services because the proper statutory scheme was not employed.

---

[1]  Further undesignated statutory references are to the Welfare and Institutions Code.

1

Alternatively, mother argues the court erred in terminating her services because there was a substantial probability the minors could be returned to her custody by the 12-month review date.  We affirm.

FACTS

In March 2011, Alameda County Social Services filed a petition to remove two of mother's five children, S.H., age five, and V.J., age six.  The other three children, S.D., age eight; J.J., age six; and S.J., age three, remained in mother's custody.[2]  The petition alleged mother physically abused S.H. and V.J., had neglected all the minors, and her mental disabilities interfered with her ability to care for the minors.  The juvenile court sustained the petition.

The disposition report noted mother was developmentally delayed and had not used services which were available to her in the past.  At the disposition hearing, the court placed S.D. with the maternal grandmother and dismissed jurisdiction as to her.  S.H. and V.J. were placed in foster care with a reunification plan and J.J. and S.J. remained with mother under a family maintenance plan.

By September 2011, mother had moved to another county and was accessing services through the Regional Center.  Family maintenance and family reunification services were continued.

The next review report recommended another six months of services.  Mother was beginning overnight visits with S.H. and V.J.  In March 2012, the court ordered further services.  The court granted a seven-day trial visit for S.H. and V.J. and returned the two minors to mother's custody in July 2012 with family maintenance services.

---

[2]  S.D., S.H., and V.J. are not subjects of this appeal.

The status review report said mother was fully engaged in her case plan and cooperating with the service providers. In August 2012, the court continued family maintenance for all four minors and transferred the case to San Joaquin County.

San Joaquin County accepted the transfer of the ongoing family maintenance case. In February 2013, the San Joaquin County Human Services Agency (Agency) filed a status review report noting ongoing concerns with mother's ability to adequately care for the four minors. The concerns related primarily to the poor state of the minors' clothing and their inadequate hygiene. V.J. and mother were both Valley Mountain Regional Center (VMRC) clients and had wrap around services to work on V.J.'s aggressive behaviors. The wrap around provider had concerns about mother's yelling at the minors and her ability to care for them. The wrap around provider believed mother needed further parenting instruction although mother had completed her parenting and counseling services in Alameda County.

In March 2013, prior to the review hearing, the Agency filed a supplemental petition (§ 387) to remove V.J. alleging that V.J. was out of control and mother had anger management and alcohol abuse issues. Mother's services were terminated as to V.J., who remained out of the home.

The December 2013 review report for the remaining three minors stated mother was struggling with all three minors due to their serious behavioral problems. Mother had been provided ongoing wrap around services, therapy, and VMRC services. The Agency assessed that there continued to be complaints and problems because mother did not know how to control the minors and did not follow up with clothing and grooming issues. Mother was not utilizing the parent classes available to her through VMRC. Despite extensive services, many issues still needed to be worked on and the Agency recommended further family maintenance services. The court adopted the recommendation.

The Agency filed a section 387 petition in March 2014 to remove J.J., age nine; S.H., age eight; and S.J., age six, from mother's custody due to ongoing care and neglect concerns, alleging mother took care of her own needs but not those of the minors, left the minors alone when she went out with her boyfriend, and did not use the parenting skills she had been taught. There were also ongoing hygiene issues and the minors were out of mother's control. The court ordered the minors detained.

The disposition report filed in May 2014 reviewed mother's difficulties in parenting and discipline. The Agency continued to believe that mother needed additional services but now suggested that a psychological evaluation could help determine whether she could benefit from further services. Mother had visited several times since the minors were removed. On at least one occasion mother became violent and yelled at the minors, threatening them. The court sustained the section 387 petition as amended, ordered reunification for J.J. and S.J. and terminated services as to S.H.

The October 2014 status review report for J.J. and S.J. stated mother continued to have difficulty parenting the two minors. The report said services were not helping mother at all and visits were chaotic. The psychological evaluation found that, although mother was provided services that accounted for her cognitive and adaptive delays, service providers reported that she had not seemed to make progress over the last two years. The evaluation concluded that mother would not be able to benefit from services within either a six- or 12-month time frame. The evaluation said that mother's inability to benefit from services stemmed from her cognitive limitations, limited motivation, inconsistent retention of parenting skills, and limited capacity for managing relationship conflict. Even with services, mother was likely to use maladaptive coping techniques and it was unlikely she could ensure her own or her child's physical and emotional safety. The Agency recommended termination of services and setting a section 366.26 hearing because the minors needed consistency and stability but mother was unpredictable, seeking reunification one day and later claiming she did not know how she would be able

4

to take care of the minors. Mother's ongoing variability affected her visits and the minor's reaction to the contact.

At the six-month review hearing held in November 2014, eight months after the minors were removed from mother's custody, the Agency changed the recommendation for a permanent plan to long-term foster care. Mother testified she would like further services. She acknowledged that there had been behavior problems at visits but she was doing better keeping her temper and now brought games and toys to visits as her parenting teacher had suggested. Mother's Community Builders worker also testified, explaining the support she was providing mother in parenting and homemaking skills. Mother was receiving 30 hours a month of services to help her with the minors. The provider testified mother's home was currently in good condition, she was learning to plan and prepare healthier meals and was working on issues of adequate clothing and bedding for the minors.

Mother argued that she had consistently participated in services and had made some progress in spite of the prognosis in the psychological evaluation. Distinguishing other cases in which services were terminated before the statutory limit, mother contended she should be given the full 12-month period for reunification. In ruling, the court observed that this was not the usual case in that mother was getting VMRC assistance before the minors were removed and the circumstances still required removal. The court relied on the results of the psychological evaluation that there would be no substantial change in mother's ability to comprehend and address the issues in another six months. The court adopted the amended findings and orders, finding by clear and convincing evidence that mother's progress toward alleviating or mitigating the causes necessitating placement of the minors in foster care was minimal and that return of the minors to mother's custody would create a substantial risk of detriment to the safety, protection, physical or emotional well-being of the minors.

DISCUSSION

I

Mother contends the juvenile court erred as a matter of law in terminating her services at the six-month review hearing because the minors were over the age of three at the time of removal and she was entitled to 12 months of services. She argues that the statutory scheme contemplates a procedure which includes a petition pursuant to section 388, subdivision (c) and a hearing on the petition in order to prematurely terminate reunification services and that the court could not do so at the six-month review hearing.

"[R]eunification services constitute a benefit; there is no constitutional ' "entitlement" ' to those services." (*In re Aryanna C.* (2005) 132 Cal.App.4th 1234, 1242 (*Aryanna C.*).) *Aryanna C.* held the juvenile court had the "authority, on a proper record and after conducting a hearing, to exercise its discretion and terminate reunification services at any time." (*Id.* at p. 1237.) In *Aryanna C.* the juvenile court terminated services for a minor under the age of three prior to the six-month hearing where the father did little to comply with the service plan and was unlikely to do better in the future. (*Id.* at pp. 1237-1238, 1241-1242.) The court found that the juvenile court had "the discretion to terminate the reunification services of a parent at any time after it has ordered them, depending on the circumstances presented." (*Id.* at p. 1242) Where the record shows that the likelihood of reunification is extremely low, continuing services wastes scarce resources and delays permanency; thus, early termination of services is consistent with the purposes of the dependency system. (*Id.* at p. 1242.)

Two years later, the court in *In re Derrick S.* (2007) 156 Cal.App.4th 436 (*Derrick S.*) applied the reasoning of *Aryanna C.* to a case where the child was over the age of three and the mother had done nothing in the first six months to comply with the case plan. (*Derrick S.,* at p. 448.) The court emphasized that the exercise of discretion to terminate services prematurely would be infrequent and warranted only where the parent

6

has already received or been offered services, giving the court a basis for evaluating whether further services would be utilized in the time remaining. (*Id.* at p. 450.) The historical perspective of the case would assist the juvenile court in assessing the likelihood of reunification. (*Id.* at p. 450.)

Following these two cases, the Legislature amended sections 361.5 and 388 to provide a procedure for early termination of services which included a hearing and criteria by which the court could exercise its discretion to terminate services. (*In re Katelynn Y.* (2012) 209 Cal.App.4th 871, 878-879.) The statutes clarified what *Derrick S.* surmised, i.e., that early termination of services would be infrequent.

Section 361.5, subdivision (a)(2) provides that any hearing to terminate services prior to the 12-month or, for a child under three, the six-month hearing shall be made pursuant to the requirements of section 388, subdivision (c). Section 388, subdivision (c)(1) provides in relevant part: "Any party . . . may petition the court, prior to the [six-month or 12-month review] hearing . . . to terminate court-ordered reunification services provided under subdivision (a) of Section 361.5 only if . . . [¶] (B) The action or inaction of the parent . . . creates a substantial likelihood that reunification will not occur, including, but not limited to . . . the failure of the parent . . . to participate regularly and make substantive progress in a court-ordered treatment plan."

The current statutory scheme clearly requires the party seeking early termination of reunification services to file a petition to secure such an order. As with all issues arising under section 388, the court may order a hearing if "it appears that the best interests of the child . . . may be promoted by the proposed" order. (§ 388, subd. (d).) This new statutory procedure was intended to protect the parents' due process rights of notice and opportunity to be heard as suggested in *Aryanna C., supra*, 132 Cal.App.4th at page 1237. No petition pursuant to section 388, subdivision (c) was filed in this case.

However, failure to follow a statutory procedure will not result in reversal unless the procedure which is used fails to provide the same constitutional protections. (Cal. Const., art VI, § 13.) The procedure used in this case did afford the parties due process.

While we agree that a section 388, subdivision (c) petition would have framed the issues more clearly, mother did have notice from the six-month review report that the Agency intended to seek early termination of reunification services and that the order would promote the best interests of the minors. These issues were tendered at the review hearing, giving mother an opportunity to be heard in opposition and mother did testify on the matter. The court did make findings by clear and convincing evidence that mother's progress in services was minimal and that returning the minors to her care would be detrimental to them. While the findings were not in the statutory language, mother did not object to the precise wording of the court's findings and may not now complain about the variance. (*In re Christopher B*. (1996) 43 Cal.App.4th 551, 558; *In re Dakota S*. (2000) 85 Cal.App.4th 494, 501-502.) Any error in failing to follow the section 388, subdivision (c) procedure was harmless.

II

Mother further argues that the court erred in terminating her services because there was a substantial probability of return of the minors by the 12-month review hearing.[3] We disagree.

---

[3] Mother's argument relies, in part, on the portion of section 366.21, subdivision (e)(3) relating to minors under the age of three, which states that if "the court finds there is a substantial probability that the child, who was under three years of age on the date of initial removal . . . , may be returned to his or her parent . . . within six months . . . , the court shall continue the case to the 12-month permanency hearing." None of the minors in this case were under the age of three at the initial removal in 2011. The "substantial probability" language does not apply to minors who are three or older at the time of initial removal due to the presumption in section 361.5, subdivision (a) that the older minors will be afforded up to 12 months of services. The only language applicable to the

8

Section 366.21, subdivision (e)(1), which governs the six-month review hearing, states in relevant part: "[T]he court shall order the return of the child to the physical custody of his or her parent . . . unless the court finds, by a preponderance of the evidence, that the return of the child to his or her parent . . . would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child. . . . The failure of the parent . . . to participate regularly *and* make substantive progress in court-ordered treatment programs shall be prima facie evidence that return would be detrimental." (Italics added.)

By the time the six-month review hearing occurred, only four months remained before the 12-month review hearing would be scheduled. The evidence of mother's ability to have the minors returned in that time was in conflict. Mother testified visits were going better and she did not blow up as easily. The Community Builders worker said mother's home was currently in good condition, mother was working on issues of adequate clothing and bedding, and mother was learning meal planning. In contrast, the evidence over the last two years when mother was receiving continuous family maintenance services showed she made little or no progress in addressing the issues of inadequate parenting and neglect. Mother's psychological evaluation noted that service providers reported mother was making no progress and concluded mother was unable to benefit from services within six months due to her cognitive limitations, limited motivation, inconsistent retention of parenting skills, and limited capacity for managing relationship conflict.

In finding mother had made minimal progress, the court resolved the conflicting evidence adversely to mother while recognizing the efforts she had made. (*In re Jason L.* (1990) 222 Cal.App.3d 1206, 1214.) The court made the findings by clear and

---

return or continuation in foster care for the older minors is the detriment of return language quoted above.

convincing evidence that mother had not made substantial progress and that return of the minors would be detrimental. These findings also support the ruling that services should not be extended to 12 months. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.)

DISPOSITION

The orders of the juvenile court are affirmed.


                                         /s/
                                         Blease, J.


We concur:


      /s/
      Raye, P. J.


      /s/
      Duarte, J.